# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARK SAUTER<br>DMZ War<br>9512 Beck Court<br>Bethesda, MD 20817<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF STATE<br>2201 C Street, N.W.<br>Washington, D.C. 20520<br><br>    Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*  Civil Action No. 17-1596<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, for the disclosure of agency records improperly withheld from plaintiff Mark Sauter by the defendant Department of State.

## JURISDICTION

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendants pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Mark Sauter ("Sauter") has been investigating the fate of unrepatriated American POWs from the Korean and Cold Wars since 1989, and uncovered evidence

that the U.S. government knew specific American prisoners were held at the end of the conflict but never returned, that reports of their survival in enemy hands continued to be received for decades after, and that information pertaining to their fate remains classified today. Mr. Sauter's findings have been covered by media organizations such as the Associated Press, New York Times, ABC News, Washington Post and Wall Street Journal. His book with Korean War POW expert John Zimmerlee, the son of a missing Korean War aviator, is entitled <u>American Trophies: How US POWs Were Surrendered to North Korea, China and Russia by Washington's "Cynical Attitude."</u> He also blogs at www.kpows.com. Mr. Sauter has been an award-winning investigative reporter, new media executive and investigative historian since 1987, working for national and local television and newspaper outlets and co-authoring four books, including McGraw Hill's university textbook <u>Homeland Security: A Complete Guide</u>. He served as a U.S. Army officer in the Special Forces and infantry, including service in the DMZ between South and North Korea.

4. Defendant Department of State ("State") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by the plaintiff that are the subject of this action.

**FACTUAL BACKGROUND**

5. This lawsuit is brought under the Freedom of Information Act ("FOIA") and ultimately will seek to compel the declassification and production of records held by several U.S. Government agencies concerning American prisoners of war ("POW"), particularly United States Air Force ("Air Force") Captain Harry Cecil Moore ("Capt. Moore"). Biographical information concerning Capt. Moore can be found at

2

*http://www.arlingtoncemetery.net/ hcmoore.htm.*

    6.  As a general introduction, Capt. Moore was the pilot of an F-51 aircraft that was part of a team of four F-51s that were dispatched on June 1, 1951, to perform a reconnaissance mission over North Korea. While on the way to their assigned target, they were ordered to proceed north and provide close air support for a B-29 bomber crew that had bailed out in enemy territory. When they went off course two of the F-51s found themselves under attack by a flight of MiG-15 aircraft. Capt. Moore's plane was shot down and he was listed as Missing – In – Action. He was designated by the U.S. Government as presumed dead on December 31, 1953.

    7.  Through the auspices of the U.S. – Russia Joint Commission on POW/MIAs, information was learned from Soviet Korean War veterans that Capt. Moore may have not only survived his shoot down but was possibly interrogated by Soviet officials including, but not limited to, Ivan Nikitovich Kozhedub, the Commander of the Soviet 64th Fighter Aviation Corps.

    8.  Some of the key information that was learned included, but was not limited to:

    (a) Colonel Nikolay Belyakov, a fighter pilot and commander, told U.S. investigators about an American pilot captured during the Korean conflict who became an instructor at the Monino Air Force Academy outside Moscow. From 1953 – 1958, the American, under an assumed name, taught tactics and helped analyze a U.S. radar device. Belyakov was even shown a picture of the man by the late General Vasiliy Kuzmich Sidorenkov. The American in the photo had light brown hair, a two-and-a-half inch scare above his right eye and was about 5'7". Belyakov identified to U.S. officials the name of a Russian officer who knew the name of the POW;

(b) In 1993, Estonian witness Boris Uibo "claimed to have met an American named Gary or Harry in Camp No. 18, near Potma, Mordovia, in or around 1952." Mr. Uibo believed his fellow campmate was shot down in the Korean War;

(c) In 1997, U.S. representatives interviewed Igor Ivanovich Shashva in Taganrog, Russia. This former Soviet pilot testified he had been told an American pilot named Capt. Gary or Harry Moore, who had been shot down in the Summer of 1951, had been interrogated by the commander of the Soviet 64th Fighter Aviation Corps; and,

(d) Also in 1997, U.S. representatives interviewed Aleksey Alekseevich Kalyuzhniy in Ukraine. Mr. Kalyuzhniy revealed he was the pilot who shot down an F-51 on June 1, 1951, and "[t]he F-51 pilot appeared to be in complete control of the aircraft as it gently landed on the sea," about 20-30 meters, or less than a hundred feet, from shore. It was his belief the pilot should have survived the crash.

9.   Capt. Moore's family was first notified in 2002 by the Department of Defense ("DoD") of information that he might have survived and had been taken captive. Based on evidence learned from the Russians, the U.S. Government modified Capt. Moore's status from Killed – In – Action back to Missing – In –Action. *http://www.dpaa.mil/ portals/85/Documents/KoreaAccounting/pmkor_una_usaf.pdf* (last accessed August 8, 2017). Ever since then the family has been searching for the true fate of what happened to their loved one. See *http://www.seattletimes.com/seattle-news/idaho-family-on-mission-to-find-pilot-lost-in-korean-war/* (last accessed August 8, 2017). Capt. Moore's story has been memorialized in the film "Keeping the Promise Alive."

10. In 2012, DoD sent a letter to Lois and Robert Moore to inform them the Korean War research was continuing at the Russian archives. Despite presumably ongoing efforts by the U.S. Government, no further information has been reported from DoD/DIA or learned by Capt. Moore's family concerning his ultimate fate.

11. Additionally, other recently declassified records have revealed that there are numerous Central Intelligence Agency ("CIA") and other U.S. intelligence documents that report about the shipment of U.S. POWs, including airmen, from Korea to the Soviet Union. This information revealed, among other things, that:

   (a) A year after the Korean conflict, the U.S. Air Force asked the CIA to substantiate the number of U.S. prisoners believed still in captivity;

   (b) In May 1954, the U.S. State Department made an official request to the Soviet Union about U.S. POWs reported held there and asked the Soviets to provide all "information available to the Soviet Government concerning these American personnel and to arrange their repatriation at the earliest possible time," and;

   (c) KGB officer Yuri (or Yury) Rastvorov defected shortly after the Korean conflict and, according to official U.S. Government records, told the U.S. about American POWs shipped to the Soviet Union. Former CIA officials who knew Rastvorov indicated U.S. aviators were among those shipped, according to their published interviews.

12. The question of American POWs remaining in Korea, Soviet Union/Russia, China or elsewhere has long been a high profile subject. Articles have abounded for decades. See e.g., CBSNEWS, "Bringing Home The Missing Soldiers Of The Korean War," Nov. 13, 2015; NBCNEWS, "China Admits To Taking U.S. POW From Korea, June 19, 2008; Moscow Times, "Soviets Held U.S. POWs, Files Say," May 6, 1996; CNN, U.S.

Says Alleged POWs Were Defectors: Reports Persist Of Surviving Prisoners In N. Korea," Jan. 16, 1996; LA Times, "U.S. Families Claim Some Korea POWs May Still Be Alive," July 8, 1990.

13. It is just not a matter of public outcry that exists as the U.S. Government has viewed and continues to view this matter supposedly as a high priority. In 1992, Presidents George H.W. Bush and Boris Yeltsin created a U.S. Russia Joint Commission on POW/MIAs so that both nations could seek to determine the fates of their missing service personnel. It was this Joint Commission that obtained some of the information concerning Capt. Moore that is detailed above. In 2015, the Defense POW/MIA Accounting Agency ("DPAA") was created as the result of a merger of the Joint POW/MIA Accounting Command (*https://en.wikipedia.org/wiki/Joint_POW/MIA_Accounting_Command*), the Defense Prisoner of War/Missing Personnel Office (*https://en.wikipedia.org/wiki/Defense_Prisoner_of_War/Missing_Personnel_Office*), and parts of the Air Force's Life Sciences Lab. One of the missions of DPPA is stated as follows:

> Resolution of the Live Prisoner Issue. Finding live Americans is the highest priority of our accounting process. Department of Defense (DoD), with the full support of the U.S. intelligence community, aggressively investigates all credible reports and sightings of alleged American survivors of the Korean War living in North Korea. Since 1995, more than 25,000 defectors from North Korea have been screened for information concerning Americans possibly living in the North. To date, this effort has produced no useful information concerning live Americans.

*http://www.dpaa.mil/Resources/Fact-Sheets/ArticleView/Article/569610/progress-on-korean-war-personnel-accounting/.*

14. Yet, it was revealed by the Associated Press in July 2013, that an internal Pentagon study found that "[t]he Pentagon's effort to account for tens of thousands of Americans missing in action from foreign wars is so inept, mismanaged and wasteful that it risks descending from 'dysfunction to total failure.'" *http://www.foxnews.com/politics/2013/07/07/study-calls-pentagon-effort-to-recover-mia-americans-acutely-dysfunctional.html*.

15. According to a DPAA July 21, 2017, press release "7,740 Americans remain unaccounted for from the Korean War." Notably, however, and notwithstanding the evidence described above, in recent years the leadership of DPAA has criticized, and in fact condemned, any information that American POWs were taken to the Soviet Union. Washington Free Beacon, "Pentagon Officials Told Russians 'No Evidence' U.S. Korean POWs Taken To Soviet Union," Nov. 14, 2016.

16. The FOIA requests that will be included in this lawsuit will ultimately include those submitted to numerous agencies, to include, but not necessarily limited to, DoD, U.S. Air Force, Defense Intelligence Agency, National Security Agency, and the CIA.

17. In July or August 2017, each of the above identified agencies were sent FOIA requests by Lois Moore, the widow of Capt. Moore, Robert Moore, his brother, Jana Orear, his daughter, and Christianne O'Malley, his granddaughter. Joining them as requesters was The James Madison Project (www.JamesMadisonProject.org), a Washington, D.C. non-partisan organization that promotes government accountability and transparency, and the current plaintiff Mark Sauter. The requests are seeking records in the following categories:

1) USAF Captain Harry Cecil Moore ("Capt. Moore"), service number AO 711850. Capt. Moore was born in Elm Grove, West Virginia, on February 11, 1924. Further biographical information is set forth below;

2) The shoot down of American F-51 aircraft on June 1, 1951, over North Korea;

3) The capture of American airmen and other U.S. service members during the Korean conflict who were interrogated and/or transported to the Soviet Union and their presumed fate. You may exclude any previously processed documents that were fully released through FOIA (i.e., any redactions must be reprocessed);

4) Any internal reports or studies that have not been released to the public on the website of the Department of Defense POW/MIA Accounting Agency or Library of Congress POW/MIA sites discussing the efforts/results of the U.S. Government's actions/investigations to locate and identify missing American airmen during the Korean conflict who were interrogated and/or transported to the Soviet Union and their presumed fate;

5) Any records concerning American POWs and former KGB defector Yuri (or Yury) Rastvorov (who informed the United States Government that American military personnel were taken to the Soviet Union during the Korean conflict). A copy of his obituary with relevant personal information is attached as Exhibit "1" and incorporated by reference into this request;

6) Any records involving communications or discussions concerning or memorializing how DoD will, should and/or did respond, whether verbally or in writing, to relatives of Capt. Moore regarding his known status in 2002 and to the present; and,

7) Any records describing or discussing how DoD pursued leads involving Capt. Moore and other POWs reported in the Soviet Union since 2000;

8) Any records reflecting or discussing correspondence or communications since January 1, 2007, with countries formerly under Soviet control, including, but not limited to, Poland, Hungary, Latvia, and the Czech Republic on America POW/MIAs from the Korean conflict, and;

9) Any records reflecting correspondence or communications with/to Members of Congress, Congressional oversight committees or representatives of the media concerning the capture of American

airmen during the Korean conflict who were interrogated and/or transported to the Soviet Union and their presumed fate. You may exclude transcripts of public hearings.

18. This FOIA lawsuit is designed to bring much needed and long overdue clarity to the final disposition of several American POWs, including Capt. Moore, whose fate has essentially been lost to history at the expense of their loved ones.

## COUNT ONE – STATE

19. Plaintiff Sauter repeats and realleges paragraphs 6 through 8, 11 – 13 above, inclusive.

20. By letter dated July 9, 2017, Sauter submitted to State a FOIA request.

21. The FOIA request specifically sought all records related to a document from the U.S. Embassy in Helsinki, Finland, dated January 1992 and entitled, "Former KGB employee claims knowledge of U.S. POWs in USSR in July 1978."

22. By letter dated July 11, 2017, State acknowledged receipt of the FOIA request and assigned it Case Control Number F-2017-13521.

23. To date, no substantive response has been received by Sauter from State. Sauter has constructively exhausted all required administrative remedies.

24. Sauter has a legal right under the FOIA to obtain the information they seek.

WHEREFORE, plaintiff Mark Sauter prays that this Court:

(1) Order the defendant federal agency to disclose the requested records in their entirety and make copies promptly available to the plaintiff;

(2) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(3) expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(4) grant such other relief as the Court may deem just and proper.

Date:   August 9, 2017

>Respectfully submitted,
>
>/s/
>_____
>Bradley P. Moss, Esq.
>D.C. Bar #975905
>Mark S. Zaid, Esq.
>D.C. Bar #440532
>Mark S. Zaid, P.C.
>1250 Connecticut Avenue, N.W.,
>Suite 200
>Washington, D.C. 20036
>(202) 454-2809
>(202) 330-5610 fax
>Brad@MarkZaid.com
>Mark@MarkZaid.com
>
>Attorneys for the Plaintiff