# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MARK SAUTER, *et al.*, | ) |
| Plaintiffs, | ) Civil Action No. 17-1596 |
| v. | ) |
| DEPARTMENT OF STATE, *et al.*, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiffs bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, arguing that they are entitled to records pertaining to Captain Harry Moore ("Capt. Moore"), a downed Korean War pilot and possible prisoner of war, from six government entities—the Department of State ("State"), Department of Defense ("DOD"), Central Intelligence Agency ("CIA"), National Security Agency ("NSA"), Defense Intelligence Agency ("DIA"), and United States Air Force ("USAF") (collectively "defendants"). After receiving no substantive response to their initial FOIA requests, plaintiffs brought this action against defendants. In their amended complaint, plaintiffs allege that they are legally entitled to documents that these government entities have improperly withheld.

Defendants moved for summary judgment with respect to plaintiffs' FOIA requests to State, CIA, DIA, and USAF. In support of their motion, defendants provide affidavits detailing each agency's efforts to fulfill plaintiffs' FOIA requests. In their opposition brief, plaintiffs concede that State's searches were adequate. Additionally, plaintiffs concede the appropriateness

1

of the Glomar response made in reliance upon FOIA Exemptions 1 and 3, along with redactions made in reliance upon FOIA Exemption 6. As such, this Court need only consider the adequacy of the searches conducted by DIA, CIA, and USAF.

DIA conducted an adequate FOIA search. DIA personnel with knowledge of the agency's recordkeeping system reviewed plaintiffs' request and concluded that there is no reasonable likelihood that DIA would possess responsive records. Instead, agency personnel determined that these records would be under the control of the Department of Defense POW/MIA Accounting Agency ("DPAA"), which is tasked with accounting for DOD personnel from the Korean War. An agency need only conduct a reasonable search for responsive records, a standard that the agency can meet even without an actual records search. DIA has met this standard.

USAF conducted an adequate FOIA search. Personnel familiar with USAF's recordkeeping systems originally searched five separate subdivisions that might have contained records responsive to plaintiffs' request. In total, these searches located 18 pages of responsive records and a responsive email exchange. Plaintiffs challenged the adequacy of the searches of two locations in their opposition brief. This Court need not address the adequacy of those initial searches because defendants cite evidence in their reply brief showing that USAF ran new searches that corrected the alleged defects in the initial searches. Additionally, USAF searched two new locations that plaintiffs mentioned in their opposition brief and released an additional 23,498 pages of responsive records to plaintiffs. USAF's remedial measures satisfy the FOIA standard.

CIA conducted an adequate FOIA search. CIA personnel with knowledge of the agency's recordkeeping system reviewed plaintiffs' request and provided affidavits detailing the exact locations searched and search terms utilized. CIA's search located no responsive records. This Court finds no deficiencies in these searches, and plaintiffs' argument that something must be

wrong with CIA's search because it did not locate records that plaintiffs claim it should have is unconvincing. As such, defendants' affidavits establish that CIA has met the FOIA standard.

In accordance with the foregoing conclusions, this Court will grant defendants' motion for partial summary judgment.

## BACKGROUND

Capt. Moore was an F-51 aircraft pilot who was dispatched to perform a reconnaissance mission over North Korea on June 1, 1951. First Am. Compl. ¶ 13, ECF No. 12. During the mission, Capt. Moore and other members of his team were ordered to provide air support for a nearby bomber crew. *Id.* In the action that followed, Capt. Moore's plane was shot down and he was subsequently listed as Missing in Action. *Id.* Capt. Moore was designated as presumed dead on December 31, 1953. *Id.*

The U.S.-Russia Joint Commission on POW/MIAs produced information which introduced the possibility that Capt. Moore survived his mission and was possibly taken as a prisoner of war. *Id.* ¶ 14. In 2002, DOD notified Capt. Moore's family of this discovery. *Id.* ¶ 16. In 2012, DOD notified Capt. Moore's family that Korean War research was continuing at the Russian archives. *Id.* ¶ 17. Capt. Moore's family has received no further information from DOD. *Id.*

In July or August 2017, plaintiffs sent each defendant FOIA requests seeking records regarding nine different categories of information, ranging from Capt. Moore's original shoot down to more recent investigations and correspondence. *Id.* ¶ 24. Lois Moore, Capt. Moore's widow, Robert Moore, his brother, Jana Orear, his daughter, and Christianne O'Malley, his granddaughter, submitted the FOIA requests. *Id.* The James Madison Project, a government accountability organization, and Mark Sauter, an investigative reporter, joined them. *Id.* After

receiving no substantive responses from any of the six agencies, plaintiffs commenced this action on August 9, 2017. Compl., ECF No. 1.[1]

## DISCUSSION

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is "appropriate only in circumstances where 'the evidence is such that a reasonable jury could not return a verdict for the nonmoving party.'" *Washington Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view all evidence "in the light most favorable to the nonmoving party" and, if a genuine dispute exists, "parties should be given the opportunity to present direct evidence and cross-examine the evidence of their opponents in an adversarial setting." *Id.*

As applied in a FOIA case, an agency defendant may be entitled to summary judgment if it demonstrates that 1) no material facts are in dispute, 2) it has conducted an adequate search for responsive records, and 3) each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure. *Miller v. U.S. Dep't of Justice*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012) (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980)). Agencies can meet their burden on FOIA matters through a "reasonably detailed affidavit," *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990), which is to be "accorded a presumption of good faith." *See Mobley v. CIA.*, 806 F.3d 568, 580–81 (D.C. Cir. 2015) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

---

[1] Plaintiffs filed an amended complaint on December 20, 2017. First Am. Compl., ECF No. 12.

4

Because plaintiffs conceded the adequacy of the searches conducted by State, this Court will consider only the searches conducted by DIA, USAF, and CIA. Mem. Opp'n Defs.' Partial Mot. Summ. J. 1, ECF No. 34. Additionally, this Court will not discuss the appropriateness of defendants' reliance on FOIA exemptions 1, 3, and 6, because plaintiffs have also conceded those issues. *Id.*

**I. DIA**

Upon receiving plaintiffs' FOIA request, DIA officials identified two offices as reasonably likely to have responsive records, should those records exist. Williams Decl. ¶ 7, ECF No. 30-4. Representatives from those offices determined that there was no reasonable expectation that responsive records would exist within DIA. *Id.* ¶ 8. Instead, agency personnel determined that these records would be held by the Department of Defense POW/MIA Accounting Agency ("DPAA"), which is tasked with accounting for DOD personnel designated as missing prior to December 31, 1990. *Id.* In 1993, DIA transferred its POW/MIA subdivision and all associated records to the Office of the Secretary of Defense, which were later transferred to the Defense Prisoner of War/Missing in Action Office ("DPMO"). *Id.* ¶ 10. In 2015, DPMO became a part of the newly-established DPAA. *Id.* Because Capt. Moore was designated as missing in action well before 1990, DIA informed plaintiffs that it did not have any responsive records. *Id.* ¶ 9.

Plaintiffs raise three complaints with respect to DIA's search. First, they note that DIA conducted no actual search of its records. Mem. Opp'n Defs.' Partial Mot. Summ. J. 7. An agency moving for summary judgment must demonstrate that it made "a good faith effort to conduct a search for the requested records, using methods which can reasonably be expected to produce the information requested." *Oglesby*, 920 F.2d at 68. DIA personnel familiar with agency recordkeeping determined that there was no reasonable expectation that the agency would have

5

responsive records. An agency has discretion to confine its search "if additional searches are unlikely to produce any marginal return." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Here, defendants provided an affidavit detailing why a records search would likely be fruitless. *See* Williams Decl. ¶ 8. Failing to go one step further and actually conduct this fruitless search does not establish inadequacy.

Second, though plaintiffs concede that six of the nine categories of information they seek would be under the purview of DPAA, they argue that because the remaining three pertain to recent developments, they post-date DIA's transfer of records and therefore should be in DIA's possession. Mem. Opp'n Defs.' Partial Mot. Summ. J. 8. This argument reflects a misunderstanding of DIA's records transfer and confuses the respective missions of DPAA and DIA. DPAA is not responsible for the maintenance of records produced before 1990; it is responsible for the maintenance of records pertaining to DOD personnel designated as prisoners of war or missing in action prior to December 31, 1990. Williams Decl. ¶ 12. In fact, DOD Directive 5110.10 explicitly states that DPAA is responsible for accounting for DOD personnel from the Korean War. *Id.* ¶ 10. Because Capt. Moore served in the Korean War—and well before 1990—there is no doubt that responsive records would be stored at DPAA, or possibly accessioned to the National Archives and Records Administration due to age. *Id.* ¶ 12. Furthermore, defendants provide another agency affidavit in their reply brief stating that any new requests for information on Korean War records are forwarded to DPAA. Morris Decl. ¶ 9, ECF No. 45-1. Plaintiffs have done nothing to rebut the presumption of good faith accorded to these agency affidavits. *See Mobley*, 806 F.3d at 580–81 (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200). Accordingly, defendants have sufficiently demonstrated why all categories of information requested by plaintiffs would be under the purview of DPAA.

Third, plaintiffs argue that DIA probably came into responsive records from other agencies through FOIA referrals. Mem. Opp'n Defs.' Partial Mot. Summ. J. 9. DIA's FOIA processing tool is not a "system of records." Morris Decl. ¶ 13. Instead, it is a case management tool and is therefore not searched for responsive FOIA records. *Id.* Here, responsive records are likely to exist in DPAA. As stated in the Morris Declaration, any responsive records that might be retained in DIA's FOIA processing tool would have originated in DPAA. *Id.* ¶ 12. Consequently, if DIA searched its FOIA database, it is likely that any responsive records located would be duplicative of those located in a search of DPAA's systems of records. *Id.* DIA has consistently referred plaintiffs to DPAA as the likely location of responsive records and DPAA is currently processing plaintiffs' FOIA request. Defs.' Mem. Supp. Partial Mot. Summ. J. 1 n.2, ECF 30-1. An agency meets its FOIA obligations if it demonstrates that its search was "reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Here, defendants have provided multiple detailed affidavits demonstrating that DIA's search was reasonably calculated to uncover all relevant documents. An agency is not required to perform a perfect search, but rather a reasonable one. *See DiBacco v. U.S. Army*, 795 F.3d 178, 191 (D.C. Cir. 2015). This Court is satisfied that DIA has done so.

## II. USAF

USAF did not originally receive a FOIA request from plaintiffs but agreed to process one after plaintiffs brought this action. Defs.' Mem. Supp. Partial Mot. Summ. J. 4. USAF officials identified five of its own subdivisions that were reasonably likely to have responsive records, were they to exist. *See id.* at 4–8. These were the Air Force Personnel Center's ("AFPC") Casualty Matters Division, the Pacific Air Force ("PACAF"), Air Force Intelligence ("AF/A2"), the Secretary of the Air Force Public Affairs ("SAF/PA"), and the Secretary of the Air Force

Legislative Liaison ("SAF/LL"). *Id.* In total, plaintiffs received 18 pages of responsive records and a responsive email exchange from the original USAF searches. *See id.*; Beasley Decl. ¶¶ 40–41, ECF No. 30-5. Plaintiffs effectively concede the adequacy of the searches conducted by AFPC, SAF/PA, and SAF/LL in their opposition brief by failing to directly address them. *See* Mem. Opp'n Defs.' Partial Mot. Summ. J. 4–7. But plaintiffs questioned why USAF did not search two of its subdivisions—the Air Force Historical Research Agency ("AFHRA") and Air Force Office of Special Investigations ("AFOSI"). *Id.* at 6–7.

Regarding the latter two subdivisions, this Court need not consider whether their exclusion from USAF's original searches constituted inadequacy, because USAF searched AFHRA and AFOSI after plaintiffs questioned their exclusion in their opposition brief. Suppl. Beasley Decl. ¶ 7, ECF No. 45-2. These searches—including the locations searched and keywords used—are detailed in the Supplemental Beasley Declaration. *See id.* ¶¶ 13–20. A search of AFOSI located no responsive records. *Id.* ¶ 15. But a search of AFHRA located 23,498 pages of responsive records, which USAF released in full to plaintiffs. *See id.* ¶¶ 18–20. USAF has now addressed plaintiffs' concerns regarding these two subdivisions. In doing so, defendants have demonstrated that USAF's searches of AFHRA and AFOSI were adequate.

Plaintiffs correctly note that USAF failed to provide the terms used in its original search of AF/A2. Mem. Opp'n Defs.' Partial Mot. Summ. J. 5–6. The original Beasley Declaration admits that the terms were not provided because USAF personnel failed to properly store them. Beasley Decl. 7 n.2. Instead of leaving it to this Court to decide whether this renders the original search inadequate, USAF opted to conduct a confirmatory search in accordance with plaintiffs' objections—this time supplying the keywords used. Suppl. Beasley Decl. ¶¶ 9–12. This search located no responsive records. *Id.* ¶ 12. Though it would have been preferable for USAF to supply

the terms of its original search, this Court is satisfied with the adequacy of the confirmatory search of AF/A2.

Plaintiffs also question why USAF originally searched PACAF for Far East Air Force records from only June 1951. Mem. Opp'n Defs.' Partial Mot. Summ. J. 5 n.1. Once again, this Court need not address the adequacy of the original search because USAF has opted to conduct another search in accordance with plaintiffs' complaints. Suppl. Beasley Decl. ¶ 8. Here, PACAF manually searched for records relating to plaintiffs' FOIA request between 1951 and 1953. *Id.* This search located no responsive records. *Id.* USAF corrected the original search's alleged deficiencies and demonstrated the adequacy of its search of PACAF.

In accordance with the foregoing conclusions, this Court is satisfied with the adequacy of USAF's searches.

### III. CIA

Upon receiving plaintiffs' FOIA request, CIA conducted a search for responsive records. Shiner Decl. ¶¶ 6–7, ECF No. 30-8. This search, detailed in the Shiner Declaration, located no responsive records. *Id.* ¶¶ 9–10. In their opposition brief, plaintiffs identify no inadequacies in the actual search process but insist that the search must have been inadequate because it did not locate records that plaintiffs already possess, which plaintiffs claim are both CIA records and responsive to their FOIA request. Mem. Opp'n Defs.' Partial Mot. Summ. J. 10–11. Plaintiffs provide no evidence to support these claims aside from the documents themselves. *See id.*

The existence of documents not produced in a FOIA search does not automatically determine the adequacy of the search. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (citing *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982)). Instead, the standard requires the agency to "show that it made a good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. CIA's affidavits clearly detail the agency's good-faith effort to conduct a reasonable search while not implicating classified information.

Even if plaintiffs could prove that the documents they provide are in the possession of the CIA—which they have not—the fact remains that an agency need only conduct a reasonable search. *See id.* Plaintiffs have done nothing to rebut the presumption of good faith accorded to agency affidavits. *See Mobley*, 806 F.3d at 580–81 (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1200).

Nevertheless, defendants provide an affidavit that addresses plaintiffs' objections to CIA's search. The Supplemental Shiner Declaration explains that even if plaintiffs' documents did at one point belong to the CIA, they could have been accessioned to the National Archives and lost their status as CIA records for FOIA purposes. Suppl. Shiner Decl. ¶ 10–11, ECF No. 45-3. Furthermore, the declaration states that some of plaintiffs' documents would not have been responsive to their FOIA request anyway. *Id.* ¶ 12. Regardless, an agency's search need only be reasonable. *See Oglesby*, 920 F.2d at 68. At this point, defendants have provided two affidavits detailing CIA's search process, which they note plaintiffs did not object to. Defs.' Reply Supp. Partial Mot. Summ. J. 9, ECF No. 45. Because CIA has conducted a reasonable search, this Court concludes that CIA has also met its FOIA burden.

## CONCLUSION

Because DIA, USAF, and CIA have all conducted adequate FOIA searches, this Court will grant defendants' partial motion for summary judgment. A separate order follows.

Date: July 30, 2019

Royce C. Lamberth
United States District Judge